HALLIE N. STONE *v.* JOHN P. STONE

[No. 1326, September Term, 1975.]

*Decided February 2, 1977.*

The cause was argued before MARVIN H. SMITH and JOHN C. ELDRIDGE, Associate Judges of the Court of Appeals and JOSEPH M. MATHIAS, Associate Judge of the Sixth Judicial Circuit, all specially assigned.

*Stanley B. Rohd,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*David E. Betts,* with whom were *Betts, Clogg & Murdock* and *Simpson & Simpson* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

On June 4, 1967, the appellant, Hallie N. Stone, and her husband, John P. Stone, voluntarily separated. A separation and property settlement agreement was executed by the parties on December 11, 1972. Subsequently, on May 8, 1973, the parties were granted a divorce *a vinculo matrimonii* in the Circuit Court for Montgomery County. The agreement of December 11, 1972, was incorporated into the divorce decree. This appeal involves the refusal of the trial court to order that Mr. Stone specifically perform the separation agreement.

The separation agreement is actually comprised of three documents: the original agreement, an "addendum" and a "second addendum." All, however, were executed on the same day. The original agreement, insofar as relevant, provided that the husband would not encumber certain life insurance policies so long as he remained obligated to pay for the maintenance of the minor children. He also agreed to furnish Mrs. Stone with proof of compliance with this provision upon her request. According to the terms of the original agreement, Mrs. Stone was to receive "alimony" of $250.00 per month during the joint lives of each spouse or until the remarriage of Mrs. Stone. In the addendum,

however, the provision for monthly alimony was cancelled and the husband contracted to make a "single lump sum payment" to his wife for her maintenance and support. The addendum thus provides:

> "5) That the Wife does hereby sell and the Husband does hereby purchase . . . the interest of the Wife in . . . [an] undeveloped tract of land containing 17.944 acres . . . for the total price of . . . ($100,000.00) and the Husband does hereby pay unto the Wife the sum of . . . ($5,000.00) . . . as a deposit to be applied as part payment for the purchase of the said 17.944 acres.

> "6) Within . . . (180) days from the date of the execution of this Addendum or within . . . (45) days following the entry of a final Decree of Absolute Divorce between the . . . [parties], the said parties . . . are required and agree to make full settlement in accordance with the terms of this Addendum . . . .

> "7) That as part of the single lump sum payment of alimony in lieu of periodic alimony payment the Husband agrees to pay, in addition to all other considerations expressed in the aforegoing agreement, the sum of . . . ($225,000.00) in cash within 180 days from the execution of this addendum or within 45 days following the entry of the final Decree of Absolute Divorce between the parties, and that until such . . . ($225,000.00) has been paid the Wife shall not be required to execute any deeds of conveyance for any transfer of property real or personal to the Husband."

Mrs. Stone filed a bill of complaint in the Circuit Court for Montgomery County alleging, *inter alia,* that Mr. Stone had failed to tender a lump sum support and maintenance payment of $225,000.00, that he had not completed the purchase of Mrs. Stone's joint interest in the tract of land for the agreed sum of $95,000.00, reflecting the balance due on the purchase price of $100,000.00, and that he had

encumbered certain life insurance policies, all contrary to the terms of the settlement agreement entered into by the parties. Mrs. Stone requested specific performance of the agreement. She also claimed that, because of the failure to tender the lump sum of $320,000.00, she was required to sell certain securities to meet "reasonable and necessary living expenses," and she requested an award of damages of $7,500.00 representing the alleged loss sustained upon the sale of these securities.

At the trial Mr. Stone testified that, at the time the agreement was executed, he contemplated paying the $320,000.00 from proceeds he hoped to acquire by the sale, development or syndication of the 17.944 acre tract of land. Mrs. Stone testified that she "knew he either would have to borrow it or sell [the tract of land]." She further testified that she "wasn't sure whether he was syndicating it or what the situation was." According to the testimony of Mr. Stone, he encountered circumstances subsequent to the agreement's formation which made it impossible for him to raise the necessary funds from the sources he had originally contemplated. His testimony indicated that a sewer moratorium, which was partially in effect in 1972, became totally effective in 1973 and 1974, precluding any sewer connections for the 17.944 acre tract. As a consequence, he claimed, the property lost its marketability as an area for commercial development. Mr. Stone also testified that he was unable to secure a loan to pay the $320,000.00 because of rising interest rates and the lack of income-producing property to pay off a mortgage or loan since the sewer moratorium precluded any construction on the property. He stated that the lending institutions would not loan funds to him without such collateral as his salary was only $30,000.00 per year.

At the conclusion of the trial the circuit court filed a memorandum opinion, setting forth certain findings of fact. The court found that at the time of the execution of the addendum pertaining to the lump sum payment, both parties contemplated that this payment would be made from the proceeds of "a sale, hypothecation or syndication of the

real property in question." The court further found that, subsequent to the agreement a sewer moratorium, which was only partially in effect at the time of the agreement, became fully effective, preventing any current development of the property. The court went on to find that the sewer moratorium, in combination with a change in the "money market," frustrated Mr. Stone's efforts to develop, sell or mortgage the property to raise sufficient funds to perform the agreement. The court concluded that these circumstances presented "an instance of temporary impossibility of performance of the type contemplated by the *Restatement of Contracts*, Section 462" and that the duty of Mr. Stone to make settlement under the agreement should be suspended until "such temporary impossibility of performance has ended."

In its opinion the court went on to note that the granting of specific performance is within the sound discretion of the court. It indicated that under the circumstances "such a disposition would be extremely harsh, if not disastrous, to the defendant" and would in all probability "deprive defendant of most, if not all, of his known property" with "little assurance that such a disposition would provide plaintiff with current funds for support and maintenance which the provision for a lump-sum payment of alimony was expected to do." As to the damages claimed because of the sale of securities, the court found that there was insufficient evidence to establish any loss on the sale. Finally, the court found that Mrs. Stone's request for information concerning encumbrances on the life insurance policies was rendered moot by testimony at the trial.

Subsequently, an order was filed by the court, in which the court "temporarily suspended" Mr. Stone's obligation for payment of the $320,000.00 because of "temporary impossibility of performance." This was the only ground set forth in the order for the refusal to grant specific performance of the promise to pay $320,000.00. The relief requested by Mrs. Stone as to the other provisions of the agreement, including the monetary damages, was also denied.

On this appeal, Mrs. Stone argues that the trial court erred in its application of the principles of temporary impossibility and in "suspending" the obligation of Mr. Stone under the agreement. She also contends that damages arising from the sale of securities, allegedly necessitated by Mr. Stone's breach of the agreement, should have been allowed. Finally, she argues that the court erred in not finding that Mr. Stone had permitted certain encumbrances on life insurance policies in violation of the settlement agreement and in denying an order to remove those encumbrances.

(1)

Mrs. Stone contends that the doctrine of impossibility of performance was inapplicable to the provisions of the agreement between her and Mr. Stone which required her husband to pay a sum of money and to purchase her joint interest in the 17 acre tract in lieu of periodic alimony. She points out that Mr. Stone's contractual obligation to pay her money was not contingent upon his ability to obtain a mortgage or to develop the 17 acre tract. Therefore, she argues, any inability on his part to mortgage, syndicate or develop the property due to a county sewer moratorium did not constitute an impossibility to perform the contractual obligation owed to her.

At the outset, we note that separation agreements are subject to general contract principles. *Heinmuller v. Heinmuller*, 257 Md. 672, 676, 264 A. 2d 847 (1970); *Saggese v. Saggese*, 15 Md. App. 378, 387-388, 290 A. 2d 794 (1972); *Pumphrey v. Pumphrey*, 11 Md. App. 287, 290, 273 A. 2d 637 (1971). It is of course true that under well-settled principles of contract law, a contracting party, under certain circumstances, may be discharged from his obligations under a contract because performance is impossible. Thus, the Restatement of Contracts § 462 (1932) provides that a temporary impossibility "of such character that if permanent it would discharge a promisor's entire contractual duty" will suspend the duty of the promisor while the impossibility exists. Performance may be rendered

impossible by events occurring after the formation of the contract as provided in § 457 of the Restatement. Section 457 provides in pertinent part:

"Except as stated in § 455, where, after the formation of a contract facts that a promisor had no reason to anticipate, and for the occurrence of which he is not in contributing fault, render performance of the promise impossible, the duty of the promisor is discharged . . . ."

See *Acme Moving & Storage v. Bower*, 269 Md. 478, 483-484, 306 A. 2d 545 (1973). However, the operation of § 457 of the Restatement is limited by the phrase "except as stated in § 455." The Restatement of Contracts § 455 provides:

"Impossibility of performing a promise that is not due to the nature of the performance, but wholly to the inability of the individual promisor, neither prevents the formation of a contract nor discharges a duty created by a contract." [1]

Under the circumstances presented here, we agree with Mrs. Stone that the doctrine of temporary impossibility is inapplicable. The transactions provided for by the contract are the payment of a sum of money and the purchase of a certain land tract in lieu of periodic alimony. By their nature, they are still capable of being performed. Mrs. Stone remains ready, willing and able to convey her joint interest in the 17 acre tract. The tract exists in the same condition as it did at the time of contracting. There has been no subsequent legislative enactment banning or regulating cash transactions of the sort involved here which would render impossible the performance of Mr. Stone's obligation to make a payment of money. Therefore, the subject matter of

---

1. Comment (a) of § 455 explains that:

"Impossibility may be due to the nature of the thing to be done or to the capacity of the person who has promised to do it. It is the difference between 'the thing cannot be done' and 'I cannot do it.' The first is objective; the second subjective. . . . All the following sections in the Chapter relate to objective impossibility."

the agreement is not incapable of being performed. The subsequent events referred to by the trial court do not render performance objectively impossible, as contemplated by the principle of impossibility of performance. *See Levine v. Rendler,* 272 Md. 1, 320 A. 2d 258 (1974). *Compare Northampton Corporation v. Washington Suburban Sanitary Comm'n,* 278 Md. 677, 366 A. 2d 377 (1976).

We believe that the principles of § 455 of the Restatement are applicable under the circumstances here. Any impossibility of performance is due solely to the financial inability of Mr. Stone to perform. Mr. Stone presented evidence that his salary is approximately $30,000.00 a year, certainly insufficient, in itself, to meet a contractual obligation of $320,000.00. At the time the contract was executed, Mr. Stone, according to his testimony, contemplated raising the necessary amount from business dealings involving the 17 acre tract. Subsequently, the Montgomery County sewer moratorium, rising interest rates and a "tight" money market may have, in fact, made Mr. Stone's efforts to raise the funds in this manner unavailing. Nevertheless, Mr. Stone's obligations under the contract are not discharged. In *Baldi Constr. Eng'r v. Wheel Awhile,* 263 Md. 670, 673, 284 A. 2d 248 (1971), the Court of Appeals said:

> "[W]e do not believe that the financial inability of one of the contracting parties to meet the contract price is an adequate ground upon which to grant rescission of a contract on the basis of impossibility of performance."

*See also* S. Williston and G. Thompson, *Law of Contracts* § 1932, (rev. ed. 1938). Mr. Stone's financial inability to settle according to the contract terms is insufficient to bring into operation the doctrine of impossibility of performance.[2]

---

2. The doctrine of impossibility of performance would appear to be inapplicable for another reason. As set forth in § 457 of the Restatement, the subsequent event rendering performance impossible must be one which "a promisor had no reason to anticipate." While the trial court stated that neither party anticipated the sewer moratorium at the time the agreement was executed, Mr. Stone testified that at that time he was negotiating with a lender for a mortgage "on the bare ground only because there was some

For these reasons, we find that the trial court erred in temporarily suspending Mr. Stone's obligations on the theory of impossibility of performance. However, although the order of the court referred only to impossibility of performance as the reason for denying the relief requested by Mrs. Stone, the memorandum opinion discussed the extreme hardship and burden which would be imposed upon Mr. Stone if the agreement were to be specifically enforced. While personal hardship or increased burden caused by events subsequent to the formation of a contract are not a sufficient basis to suspend the obligation under the doctrine of temporary impossibility, they are factors which may be considered by the equity court in determining whether it should exercise its discretion in granting the remedy of specific performance. *Zouck v. Zouck,* 204 Md. 285, 296, 104 A. 2d 573 (1954). Because it is unclear from the court's opinion, especially in view of the court's order denying specific performance, whether these factors represent an alternative ground for denying the requested relief or whether the court merely considered them in determining if the doctrine of impossibility was applicable, we shall remand the case for further proceedings on this issue. *Brown v. Brown,* 278 Md. 672, 366 A. 2d 18 (1976).

(2)

Mrs. Stone next contends that the trial court erred in refusing to award her damages in the amount of $7,500.00, representing an alleged loss sustained upon a sale of certain securities. Mrs. Stone claims that the sale was necessary to meet living expenses when Mr. Stone failed to make the "lump sum payment" as provided by the agreement.

The trial court found that Mrs. Stone failed to produce sufficient evidence to establish a loss on the sale of the securities. Upon a review of the record, we cannot say that this determination was clearly erroneous. *See* Maryland Rule 1086. Moreover, there is no evidence that the sale of

---

question of a sewer moratorium for a three year period." Clearly Mr. Stone had reason to anticipate the imposition of a sewer moratorium at the time he executed the agreement. *Cf.* Jeffrey Sneider-Maryland, Inc. v. LaVay, 28 Md. App. 229, 345 A. 2d 79 (1975).

these securities was required as a consequence of Mr. Stone's failure to tender the lump sum payment. For these reasons, we shall affirm the trial court's denial of the $7,500.00 damages.

(3)

Mrs. Stone's final contention is that the trial court erred in denying her request for an order that Mr. Stone remove certain encumbrances on a life insurance policy. At the time the parties executed the settlement agreement, Mr. Stone had a Northwestern Mutual Life Insurance policy which was encumbered by a loan in the amount of $10,000.00. The agreement provides that he shall not pledge or encumber the life insurance policy. According to the most recent statement received from Northwestern Mutual, however, the "policy loan balance as of November 1, 1974, [was] $14,825.32 which included $3,762.43 in unpaid interest," a fact conceded by Mr. Stone in oral argument before us. Therefore, the court should order Mr. Stone to remove the encumbrance reflected by the amount in excess of the original $10,000.00 indebtedness.

> *Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*
> *Costs to be divided equally.*