**EAST CAPITOL VIEW COMMUNITY DEVELOPMENT CORPORATION, INC., Appellant,**

**v.**

**Denean ROBINSON, Appellee.**

**No. 06–CV–195.**

District of Columbia Court of Appeals.

Submitted Jan. 23, 2007.

Decided Feb. 7, 2008.

———————

Barry M. Tapp, Washington, was on the brief for appellant.

Alan Lescht, Washington, was on the brief for appellee.

Before WASHINGTON, Chief Judge, and FARRELL and FISHER, Associate Judges.

WASHINGTON, Chief Judge:

East Capitol View Community Development Corporation, Inc. ("appellant"), appeals from a judgment in favor of Denean Robinson ("appellee") for breach of an employment contract. Appellant contends that the trial court erred in failing to instruct the jury on the doctrine of impossibility of performance in a breach of contract case where the breaching party claimed that a revocation of grant funding rendered its payment to an employee under a written one-year employment contract impossible. We disagree and affirm.

**I.**

East Capitol hired Denean Robinson pursuant to a written employment contract for a one-year term. Before the end of that term, however, East Capitol informed her that her employment would be terminated early for lack of funding. Although the employment contract stated that Robinson's "continued employment with [East Capitol] will be contingent on successfully achieving all performance goals and outcomes," there was no language stating that a lack of funding could excuse appellant

from prematurely terminating appellee's contract. Robinson filed suit against appellant for breach of contract. East Capitol principally defended against the lawsuit by arguing that despite the set term in the written agreement or the noted contingency, appellee was an at-will employee and could be terminated at any time. Appellant, however, did inform appellee in her termination letter, as well as indicate at trial, that it terminated her contract because its grant funding from the District of Columbia Housing Authority had been cancelled.

Before closing argument, the trial court consulted with counsel regarding jury instructions and both parties agreed to the proposed instructions. At that time, appellant's counsel did not ask for an instruction on the affirmative defense of impossibility of performance. Amongst other instructions, the court instructed the jury, in relevant part: "[i]f you find the defendant breached the contract with the plaintiff, and the defendant's breach was not excused, then you must award the plaintiff damages." [1] During deliberations, the jury sent a note to the trial judge, asking "if a lack of funding constitutes an excuse of breach of contract, as per Jury Instruction form 11–31." The court discussed the note with counsel and asked for their suggestions on how the court should respond to the note. Appellant's counsel agreed with the court's drafted response, yet further proposed that the court give an instruction on impossibility of performance as well. Ultimately, the court denied the impossibility of performance instruction finding that "to just throw that in at this time would be gratuitous," and instead issued its drafted response to the jury note, stating that "[w]hether or not a lack of funding

1. STANDARDIZED CIVIL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA, No. 11–31 (1998), relat-
ing to "Breach of Contract—Damages."

constitutes an excuse for breach of contract depends on your factual analysis of the contract. In making your analysis you should consider all the instructions you have been given, including 11.13,[2] 11.14,[3] and 11.15.[4]" The jury returned a verdict in favor of appellee. This appeal followed.

## II.

Appellant contends that the trial court erred in failing to instruct the jury on the impossibility of performance defense.[5] In essence, appellant argues that it was entitled to an impossibility of performance instruction because "the central issue in the case was whether appellant had an excuse for terminating the contract with appellee because its [g]rant funding had been cancelled and it was no longer able to pay her salary." "A trial court has broad discretion in fashioning appropriate jury instructions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law." *Psychiatric Inst. of Wash. v. Allen,* 509 A.2d 619, 625 (D.C.1986) (citations omitted). Further, a jury instruction is "not warranted without some evidence to support it." *Brown v. United States,* 881 A.2d 586, 594 n. 11 (D.C.2005); *see Gubbins v. Hurson,* 885 A.2d 269, 280 n. 4 (D.C.2005) (stating that a party is entitled to a jury instruction on its theory of the case "as long as the requested instruction finds support in the evidence"). Accordingly, in order to receive an impossibility of performance instruction, East Capitol must demonstrate that there was record evidence that could at least support such a defense.

2. STANDARDIZED CIVIL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA, No. 11–13 (1998), relating to "Terms of a Contract–Evidence."

3. STANDARDIZED CIVIL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA, No. 11–14 (1998), relating to "Contract Interpretation–Course of Performance."

4. STANDARDIZED CIVIL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA, No. 11–15 (1998), relating to "Contract Interpretation–Custom and Usage."

5. STANDARDIZED CIVIL JURY INSTRUCTION FOR THE DISTRICT OF COLUMBIA, No. 11–21 (1998), relating to "Impossibility of Performance" provides in part:

Generally, a person is not excused from performing his or her duties under a contract even if performance has become more difficult or expensive than expected at the time that the contract was made. However, a person is excused from his or her failure to perform a contract if performance is impossible. A party claiming that performance is impossible must prove that:
(1) performance was absolutely impossible, or performance would involve extreme and unreasonable difficulty, expense, injury, or loss;
(2) the circumstances which made performance impossible were not reasonably foreseeable at the time the contract was made;
(3) the party claiming impossibility did not assume the risk that the circumstances making performance impossible would occur; and
(4) the party claiming impossibility did not cause the circumstances making performance impossible.

Appellee argues that appellant did not preserve its right to raise this issue on appeal, as required by Super. Ct. Civ. R. 51, because appellant did not formally object to the trial court's failure to give the jury an instruction on impossibility of performance. Because the trial court had an opportunity to consider appellant's proposed instruction on impossibility of performance, discussed the instruction with counsel, and made clear its unwillingness to give it, appellee's claim is without merit. *See Thoma v. Kettler Bros.,* 632 A.2d 725, 727 n. 3 (D.C.1993) (concluding a jury instruction challenge was preserved where the court considered the proposed instructions and explained the grounds for rejecting the instructions).

A party's obligation to perform under a contract may be excused if performance is rendered impossible. *See Bergman v. Parker,* 216 A.2d 581, 583 (D.C.1966). To establish impossibility or commercial impracticability,[6] "a party must show (1) the unexpected occurrence of an intervening act; (2) the risk of the unexpected occurrence was not allocated by agreement or custom; and (3) the occurrence made performance impractical." *National Ass'n of Postmasters of the United States v. Hyatt Regency Washington,* 894 A.2d 471, 477 n. 5 (D.C.2006) (citing *Transatlantic Fin. Corp. v. United States,* 124 U.S.App.D.C. 183, 186, 363 F.2d 312, 315 (1966)). "Unless the court finds these three requirements satisfied, the plea of impossibility must fail." *Id.,* 124 U.S.App. D.C. at 186–87, 363 F.2d at 315–16.

The doctrine of impossibility relieves non-performance only in extreme circumstances. *See Island Dev. Corp. v. District of Columbia,* 933 A.2d 340, 350 (D.C.2007). The party asserting the defense of impossibility bears the burden of proving "a real impossibility and not a mere inconvenience or unexpected difficulty." *Bergman, supra,* 216 A.2d at 583. Moreover, courts will generally only excuse non-performance where performance is objectively impossible—that is, the contract is incapable of performance by anyone—rather than instances where the party subjectively claims the inability to perform. *See, e.g., Bergman, supra,* 216 A.2d at 583 (rejecting appellant's claim that it was impossible to obtain building permits as "[t]here [was] no question that building permits could have been issued after modification of existing plans"); *Transatlantic Fin. Corp., supra,* 124 U.S.App.D.C. at 190, 363 F.2d at 319 (holding that the closure of the Suez Canal did not render performance of a shipping contract impossible as there was an alternate route); *White Lakes Shopping Ctr., Inc. v. Jefferson Standard Life Ins. Co.,* 208 Kan. 121, 490 P.2d 609, 612 (1971) ("The impossibility which will, or may, excuse the performance of a contract must exist in the nature of the thing to be done. It must not exist merely because of the inability or incapacity of the promisor or obligor to do it."). Indeed, "[i]t is generally well settled that subjective impossibility, that is, impossibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of the contractual obligation." C.T. Foster, Annotation, *Modern Status of the Rules Regarding Impossibility of Performance as Defense in Action for Breach of Contract,* 84 A.L.R.2d 12, § 4 (1962); *see also* 14 CORBIN ON CONTRACTS § 74.6 (2001) ("Subjective impossibility is less likely to support a claim of discharge. It is sometimes said that the duty of a promisor is never discharged by the mere fact that the supervening events deprive the promisor of the ability to perform personally if they would not prevent others from rendering the performance.").[7] The Restatement similarly recognizes the objective/subjec-

---

6. Impossibility and commercial impracticability involve the same considerations. *See Bergman, supra,* 216 A.2d at 583 (noting that impossibility need not be absolute, but "includes impracticability due to extreme or unreasonable difficulty").

7. By contrast, the predecessor to this court excused performance due to an objective impossibility beyond the control of the contracting parties in *Whelan .v. Griffith Consumers Co.,* 170 A.2d 229 (D.C.1961). In that case, the court agreed that a blizzard rendered delivery of heating oil to a farmhouse impossible. *Id.* at 230. After the driver attempted to fight through six foot high snowdrifts for six hours, he had to seek the assistance of a wrecking truck to remove the delivery truck. *Id.*

tive distinction, concluding that while a party's duty to perform is discharged if it is made objectively impracticable, "if the performance remains practicable and it is merely beyond the party's capacity to render it, he is ordinarily not discharged." RESTATEMENT (SECOND) OF CONTRACTS § 261 cmt. e (1981).[8]

■ Under this analysis, a party's alleged financial inability to perform a contract that it voluntarily entered would rarely, if ever, excuse non-performance; though a party may prove that it can no longer afford performance, it will be hard-pressed to prove that non-performance "exist[s] in the nature of the thing to be done." *White Lakes Shopping Ctr., Inc.*, *supra*, 490 P.2d at 612. Although this court has not directly ruled on whether financial inability to meet a contractual obligation excuses non-performance, most, if not all, other jurisdictions that have addressed this issue agree that it does not. *See, e.g., Baldi Constr. Eng'g, Inc. v. Wheel Awhile, Inc.*, 263 Md. 670, 284 A.2d 248, 249 (1971) (noting the distinction between objective and subjective impossibility and concluding, "[w]e do not believe that the financial inability of one of the contracting parties to meet the contract price is an adequate ground upon which to grant rescission of a contract on the basis of impossibility of performance."); *Stone v. Stone*, 34 Md.App. 509, 368 A.2d 496, 500 (1977) ("The transactions provided for by the contract are the payment of a sum of money and the purchase of a certain land tract in lieu of periodic alimony. By their nature, they are still capable of being performed."); *In re Busik*, 759 A.2d 417, 423 n. 9 (Pa.Commw.Ct.2000) (Friedman, J., concurring) (stating that impossibility does not include a party's financial inability to perform); *Dills v. Enfield*, 210 Conn. 705,

557 A.2d 517, 523 (1989) (holding that "only in the most exceptional circumstances have courts concluded that a duty is discharged because additional financial burdens make performance less practical than initially contemplated"). Indeed, even insolvency is unlikely to excuse performance: "In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance." *Central Trust Co. v. Chicago Auditorium Ass'n*, 240 U.S. 581, 591, 36 S.Ct. 412, 60 L.Ed. 811 (1916);14 CORBIN ON CONTRACTS § 74.6 (2001) ("Personal insolvency does not discharge a debtor from a legal duty. It does not wholly deprive a debtor of ability to pay; but even if it did, it would be no defense in an action by a creditor. Although bankruptcy laws provide relief for the insolvent, it is the court's decree that discharges, not the personal inability of the debtor to pay the debt."); *cf. 407 East 61st Garage, Inc., v. Savoy Fifth Avenue Corp.*, 23 N.Y.2d 275, 282, 296 N.Y.S.2d 338, 244 N.E.2d 37, 42 (1968) ("[T]he applicable rules do not permit a party to abrogate a contract, unilaterally, merely upon a showing that it would be financially disadvantageous to perform it; were the rules otherwise, they would place in jeopardy all commercial contracts.").

■ Nor does the promisor's reliance on some third party for the ability to perform convert financial inability to perform into an objective impossibility. "[T]he rationale is that a party generally assumes the risk of his own inability to perform his duty. Even if a party contracts to render a performance that depends on some act by a third party, he is not ordinarily discharged because of a failure by that party

---

8. In the absence of well-developed doctrine in our jurisdiction, this court has looked to the Restatement of Contracts for guidance. *See*

*Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615, 618 (D.C.1989).

because this is also a risk that is commonly understood to be on the obligor." RE-STATEMENT (SECOND) OF CONTRACTS § 261 cmt. e; *see also id.* at § 261 cmt. b., illus. 2 (illustrating that even if the promisee knows that the promisor's sole source of funding comes from a third-party and that promisor can no longer obtain funds from the third-party, the promisor is still obligated). For example, in *International Bhd. of Firemen & Oilers v. Board of Educ.*, 500 Pa. 474, 457 A.2d 1269, 1271 (1983), the Pennsylvania Supreme Court rejected a school district's claimed inability to comply with a new bargaining agreement to pay increased salaries and benefits to its employees because the Philadelphia City Council failed to provide it with sufficient funding. Thus, the anticipation of funding from one source does not alter the party's duty to perform. *Cf. Stone, supra,* 368 A.2d at 501 (concluding that promisor's inability to raise funds from an anticipated sale of land failed to discharge his contractual obligations).

Of course, parties may contractually reallocate risk to the other party. However, in this case, there is no evidence that appellant assigned the risk of its financial instability to the appellant. *See United States v. Winstar Corp.*, 518 U.S. 839, 905, 116 S.Ct. 2432, 2469–70, 135 L.Ed.2d 964 (1996) (quoting *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47, 50 (1944) (Traynor, J.) (brackets in *Winstar Corp.*)) ("'If [the risk] was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.'"). Though appellant maintained that the revocation of funding deprived the corporation of sufficient assets to continue paying its employees, it failed to include such a possibility as a condition precedent in the employment agreement. Indeed, while appellant specifically included language warning appellee that her continued employment was

contingent upon successful performance, it failed to address funding in any way. *See Bergman, supra,* 216 A.2d at 583 (noting that appellant had not made his duty to obtain building permits a condition precedent to performance of the contract); *International Bhd. of Firemen and Oilers, supra,* 457 A.2d at 1271 (noting that the school district had failed to include any language in its agreement with the union that "any particular level of funding is a condition precedent to the payment of the agreed on salary and benefit increases."). The agreement does not mention the source of the salary, let alone warn appellee that her continued employment was contingent upon continued grant funding.

Robinson's employment contract was objectively capable of performance, and East Capitol did nothing to reallocate the risk of its own inability to pay. As East Capitol was not entitled to a defense of impossibility, the trial court's decision to withhold the impossibility defense jury instruction was not error. Accordingly, the judgment of the trial court is

*Affirmed.*