# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YVETTE MCDOWELL,
On behalf of Ricardo McDowell,

        Plaintiff,

    v.

DISTRICT OF COLUMBIA,

        Defendant.

Civil Action No. 18-1382
KBJ/DAR

## REPORT AND RECOMMENDATION

Plaintiff Yvette McDowell commenced this action on behalf of her child, Ricardo

McDowell, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §

1400 *et seq.*, seeking judicial review of a final decision of the District of Columbia Office of the

State Superintendent of Education.[1]  *See* Complaint (ECF No. 1).  In the complaint, Plaintiff

claims that the Hearing Officer erred as a matter of law when he concluded that Mr. McDowell

was not denied a free and appropriate education ("FAPE"), even though Mr. McDowell did not

receive any services outlined in his Individualized Education Program ("IEP").  *See id.* ¶¶ 22-28.

Plaintiff requests that the court overturn the Hearing Officer Determination ("HOD"), find that

Defendant denied Mr. McDowell a FAPE, and remand this case to determine the appropriate

amount of compensatory education to remedy the alleged denial of FAPE.  *Id.* at Relief, ¶¶ 1-4.

---

[1] Mr. McDowell is over the age of eighteen but remains a "child" under the IDEA.  *See* 20 U.S.C. § 1412(a)(1)(A) (covering "children" between three and twenty-one); D.C. Mun. Regs. tit. 5-E, § 3002.1(a) (covering children between three and twenty-two).  For that reason, this Report and Recommendation will refer to Mr. McDowell as a child while using his full name.

## I.    BACKGROUND

Ricardo McDowell is eligible for special education services as a student who has been diagnosed with an intellectual disability and Prader-Willi Syndrome.  Complaint ¶ 7; *see* HOD (ECF No. 8-1) at 6.  During the 2017-2018 school year, Mr. McDowell attended Joseph P. Kennedy, a non-public school.  *See* Complaint ¶ 10; HOD at 6.  His IEP provided for "27 hours/week of specialized instruction outside general education, with 120 minutes/month of behavioral support services ("BSS") outside general education and a full-time dedicated aide." HOD at 6.  On February 14, 2018, Mr. McDowell was expelled from Joseph P. Kennedy, effective March 1, 2018, for an incident that occurred on February 9, 2018.  *See id.*  On the day of the incident, Mr. McDowell attacked and punched another "medically-fragile" student, after which police had to restrain Mr. McDowell and take him to a hospital.  *Id.* at 10.   As a result of this incident and similar behavior in the past, the principal stated that "[Mr. McDowell] was too aggressive and volatile for [Joseph P. Kennedy] and could not continue at [the school] whether or not the behavior was a manifestation of disability."  *Id.*  The District of Columbia subsequently sent ten referrals to other non-public schools in an effort to locate one which Mr. McDowell could attend.  *Id.* at 11.  By the time of the HOD, three of the schools had declined, while others had not responded.  *Id.*  The Plaintiff filed a due process complaint on February 26, 2018, alleging that Defendant denied Mr. McDowell a FAPE when it failed to identify a location of services following his expulsion from Joseph P. Kennedy.  *Id.* at 3.

On March 15, 2018, the Hearing Officer issued his HOD.  *Id.*  In it, he concluded that Joseph P. Kennedy erred both substantively and procedurally in its Manifestation Determination

Review ("MDR").[2] *See id.* at 16-18. The school erred procedurally by not consulting Mr. McDowell's Individualized Education Plan ("IEP") when conducting the MDR. *Id.* at 16-17. The school erred substantively by concluding that the conduct was not a manifestation of Mr. McDowell's disability. *Id.* at 15. To remedy these errors, the Hearing Officer ordered the District "to indicate that Mr. McDowell's behavior on February 9, 2018 was a manifestation of [his] disability[,]" and that within 10 school days of Mr. McDowell's placement in a new school location, his Behavior Intervention Plan should be modified to address such behavior as a manifestation of his disability. *Id.* at 18.

The Hearing Officer also concluded that the District did not fail to provide Mr. McDowell a FAPE even though the District did not identify a new school location after Mr. McDowell was expelled from Joseph P. Kennedy.[3] *See id.* at 15-16. According to the Hearing Officer, the District took "prompt action" by sending referrals to ten non-public schools, and "[t]he problem is that Student is very difficult to place in a new school location, as everyone agrees." *See id.* The Hearing Officer also ruled on two issues in favor of the District which Plaintiff does not challenge. *See id.* at 13-15.

## II.     CONTENTIONS OF THE PARTIES

Plaintiff alleges that the Hearing Officer erred in determining that Mr. McDowell was not denied a FAPE where Defendant, after Mr. McDowell was expelled from Joseph P. Kennedy,

---

[2] After a child violates a student code of conduct, a local educational agency ("LEA") must conduct a MDR to determine whether the conduct was a manifestation of the child's disability, and, if so, provide a "behavioral intervention plan" to address the conduct. 20 U.S.C. § 1415.

[3] While the parties and the Hearing Officer sometimes use "placement" and "location" interchangeably, the terms are distinct in the IDEA context. *See D.K. v. District of Columbia*, 983 F. Supp. 2d 138, 145 (D.D.C. 2013). A child's placement means "the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *Id.* (quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009)). As no issue concerning Mr. McDowell's "placement" is presented, the undersigned utilizes the term "location of services." *See id.*

neither provided another school at which his IEP could be implemented nor otherwise provided the services prescribed by his IEP. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment") (ECF No. 10-1) at 5. Plaintiff contends that Mr. McDowell's actions which led to his removal from Joseph P. Kennedy were a manifestation of his disability. *See id.* at 4. As a result, Plaintiff claims that "the IEP team must return [Mr. McDowell] to an educational placement that can implement [his] IEP." *Id.* Plaintiff further contends that the Hearing Officer "offered no explanation [of] how a total and complete failure to implement *any* aspect of Mr. McDowell's IEP does not constitute a denial of FAPE." *Id.* at 5. Plaintiff contends that the Hearing Officer's finding that she "did not point to anything that DCPS could have done or should have done that it had not done to find a new school" erroneously places the burden on Plaintiff to "determine a remedy for a denial of FAPE." *Id.* at 5.

Defendant contends that it is entitled to summary judgment in its favor. *See generally* Defendant's Cross Motion for Summary Judgment (ECF No. 13). Defendant offers two arguments: (1) finding a placement for Mr. McDowell is impossible, which means that the District's failure to provide a FAPE is excused, and (2) Mr. McDowell has "unclean hands" in causing his FAPE to remain unfulfilled, so Mr. McDowell cannot now seek relief in equity to pursue his FAPE. *See* Defendant's Memorandum in Support of Defendant's Cross Motion for Summary Judgment (ECF No. 13) at 8-12. Defendant first argues that, since-principles of contract interpretation may sometimes be relevant to the IDEA, it follows that contract "performance" under the IDEA should be excused when performance is impossible. *See id.* at 8-10. Defendant points to the fact that the District has no adequate facilities, and that eight schools rejected referrals for Mr. McDowell as evidence that it is impossible to provide Mr. McDowell a

4

FAPE. *See id.* at 10-11. Defendant maintains that it satisfied the IDEA because the statute only requires that a FAPE "is available" to all children with disabilities, not that "every potentially eligible child *receive* a FAPE." *Id.* at 9. Defendant's second argument is that "[t]he doctrine of unclean hands forecloses any right to a remedy here." *Id.* at 11. Defendant essentially argues that Mr. McDowell's behavior is the cause of the District's inability to locate an alternative school, and thus, Mr. McDowell is not entitled to "equitable relief." *Id.* at 11-12.

In reply to Defendant's Opposition to her Motion and in opposition to Defendant's Motion, Plaintiff argues that Defendant conceded that Mr. McDowell has been—and continues to be—denied a FAPE. Plaintiff's Reply and Opposition to Defendant's Opposition and Cross Motion for Summary Judgment ("Plaintiff's Reply") (ECF No. 15) at 2-3. Plaintiff therefore asks that this case be remanded for a hearing officer to determine the appropriate remedy. *Id.* Second, Plaintiff argues that Defendant's impossibility defense fails because (1) Defendant failed to prove the elements of an impossibility defense and (2) characterizing Mr. McDowell as "aggressive and violent" does not create an impossibility where Defendant "has not *tried* to provide educational services that approximate [Mr. McDowell's] IEP[.]" *Id.* at 3-7. In response to Defendant's argument that Plaintiff has "unclean hands," Plaintiff argues that the doctrine does not apply to students in the IDEA context because the manifestation of a disability cannot be the basis for the deprivation of a FAPE. *Id.* at 7-9.

In support of its Cross Motion for Summary Judgment, Defendant reiterates that it is "actually impossible" for the District to provide a FAPE and that Plaintiff fails to meet her burden to show otherwise. *See* District of Columbia's Reply in Support of its Cross Motion for Summary Judgment (ECF No. 17) at 2-3. Defendant also reiterates that this impossibility was

caused by Mr. McDowell's behavior and, in such circumstances, Plaintiff must be denied relief in equity because of the doctrine of unclean hands. *See id*. at 6.

## III.    STATUTORY FRAMEWORK

The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *M.G. v. District of Columbia*, 246 F. Supp. 3d 1, 7 (D.D.C. 2017) (citing 20 U.S.C. § 1400(d)(1)(A)).  To meet this purpose, the federal government provides funding to States for specialized education of children with disabilities on the condition that States provide a FAPE to eligible children. *See Brown v. District of Columbia*, No. 17-cv-348, 2019 WL 3423208, at *6 (D.D.C. July 8, 2019).

The District of Columbia is considered a State within the meaning of the IDEA. *See* 20 U.S.C. § 1401(31).  As a result, "DCPS has a fundamental obligation to provide FAPE to a child with a disability residing in the District of Columbia." *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 84 (D.D.C. 2014).  Under the IDEA, eligible children between the ages of three and twenty-one must receive "special education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate . . . secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required[.]" *See* 20 U.S.C. § 1412(a)(1)(A); 20 U.S.C. § 1401(9).  The District goes beyond the requirements of the IDEA by covering students until the age of 22. *See* D.C. Mun. Regs. tit. 5-E, § 3002.1(a).

6

The District provides an adequate FAPE if it substantially implements a child's IEP through an appropriate educational placement and plan for instruction. *See* 20 U.S.C. § 1414(d)(1)(A, B), § 1414(e). An IEP must determine specific educational goals in light of a student's disability and match the child with a placement which can meet those goals. *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). This assessment must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* Once an IEP is in place, the IDEA is violated if there is a "material failure" to implement the IEP. *James v. District of Columbia*, 194 F. Supp. 3d 131, 139 (D.D.C. 2016). The District need not demonstrate "perfect compliance" with a student's IEP, but there must not be "more than a minor discrepancy between the services a school provides to a disabled child and the services required by that child's IEP." *Johnson v. District of Columbia*, 962 F. Supp. 2d 263, 268 (D.D.C. 2013).

To ensure these requirements are followed, the IDEA's procedural safeguards allow a parent to seek judicial review of a HOD. *See Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 122 (D.D.C. 2018). Section 1415(f)(1)(A) provides "the parents or the local education agency involved in such a complaint shall have an opportunity for an impartial due process hearing . . . ." Following a due process hearing, Section 1415 (i)(2)(A) provides that an aggrieved party may bring a civil action in federal court.

While the District has a "fundamental obligation to provide FAPE to a child with a disability" within the District, the IDEA relieves the obligation in some circumstances. *Abramson*, 493 F. Supp. 2d at 84. Some children are not covered. The District, for example, does not have to implement an IEP if a child's parents do not consent. *See* 34 C.F.R. § 300.300. Nor does the District have to implement an IEP for a child who has graduated from high school

and obtained a high school diploma. *See* 34 C.F.R. § 300.102. A court may also decline to provide relief to an otherwise eligible child if the IDEA's jurisdictional requirements are not met. *See* 20 U.S.C. §1415(f)(3)(C) (providing a statute of limitations); 20 U.S.C. § 1415(l) (requiring administrative exhaustion). Beyond exceptions for children in particular circumstances and for those who do not meet jurisdictional requirements, however, the IDEA provides no enumerated "contractual" or "equitable" defenses.

## IV. APPLICABLE STANDARD OF REVIEW

Under the IDEA, "the [reviewing] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see also* 34 C.F.R. § 300.516(c). The IDEA gives the court "broad discretion" to fashion an appropriate remedy to provide a FAPE. *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993); *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015).

In civil actions seeking review of a HOD under the IDEA, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *Q.C-C., et al. v. District of Columbia*, 164 F. Supp. 3d 35, 43-44 (D.D.C. 2016) (quoting *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11,16 (D.D.C. 2009)). This Circuit has explained that "given the district court's authority to hear additional evidence . . . and base its decision on the preponderance of the evidence, 20 U.S.C. §§ 1415(i)(2)(B)(ii), (iii), the IDEA plainly suggests less deference than is conventional in administrative proceedings." *Reid ex. rel. Reid v. District of Columbia*, 401 F.3d

8

516, 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)) (internal quotation marks omitted). Courts must afford "due weight" to the state administrative proceedings and avoid "substitut[ing] their own notions of sound educational policy for those of the school authorities they review." *Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). However, "a hearing decision without reasoned and specific findings deserves little deference." *Reid*, 401 F.3d at 521 (quoting *Kerkam*, 931 F.2d at 87) (internal quotation marks omitted); *see also M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 40 (D.D.C. 2013) ("[W]hile a certain amount of deference should be accorded to the knowledge and expertise of the hearing officer, courts will accord less deference if the hearing officer's determination lacks reasoned and specific findings."). In cases that appeal the Hearing Officer's interpretation of a statute, the issue is a pure question of law that is reviewed de novo. *See, e.g.*, *Reid*, 401 F.3d at 521.

Moreover, "[a] court is obligated by the IDEA to ensure that [the] relief set forth in the administrative award was appropriate" and the court "may not simply rely on the Hearing Officer's exercise of discretion." *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013) (internal quotation marks and citations omitted). The party challenging the hearing officer's decision "take[s] on the burden of persuading the court that the hearing officer was wrong." *Id.* at 35 (internal quotation marks omitted); *accord Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (finding that the burden of proof in an administrative hearing concerning an IEP is upon the party seeking relief); *see also* D.C. Mun. Regs. tit. 5-E, § 3030.3.

## V.     DISCUSSION

The undersigned finds that the Hearing Officer erred as a matter of law in excusing the District's failure to provide Mr. McDowell a FAPE.  The parties do not dispute that Mr. McDowell is eligible for a FAPE and that the February incident which led to his expulsion from Joseph P. Kennedy had no effect on his eligibility.  Instead, the District of Columbia asserts two novel defenses to relieve itself of its obligation to provide a FAPE.  Neither defense applies here.

### A.  *The District of Columbia is Obligated to Provide Mr. McDowell a FAPE*

Where a school disciplines a child with a disability for a violation of a code of student conduct, the Local Educational Agency ("LEA") must perform a Manifestation Determination Review ("MDR") to determine whether the violation was caused by a child's disability.  34 C.F.R. 300.530(e)(1).  If, after the MDR, the LEA determines that the student's disability caused the violation, the IDEA generally provides that the LEA must "return the child to the placement from which the child was removed, unless the parent and local educational agency agree to a change of placement as part of the modification of the behavioral intervention plan."  20 U.S.C. § 1415(k)(1)(F)(iii).  In special circumstances where a child has "inflicted serious bodily injury" in school, the LEA may remove the student to an "interim alternative educational setting" for no more than 45 days.  20 U.S.C. § 1415(k)(1)(G).  In both circumstances, an LEA must modify a child's behavioral intervention plan to provide a FAPE to a student whose conduct caused by a disability violates a student code of conduct.  *See id.*

The Hearing Officer erred in resisting the conclusion that the District denied Mr. McDowell a FAPE.  The Hearing Officer found—and the parties do not dispute—that Mr. McDowell's disability caused the conduct leading to his expulsion.  *See* HOD at 17.  There is

also no question that the District did not "return the child to the placement from which the child was removed" or provide an "interim alternative educational setting." *See* HOD at 13-14; 20 U.S.C. § 1415(k)(1)(F)(iii), § 1415(k)(1)(G). This resulted in a total failure to provide any services prescribed by Mr. McDowell's IEP. A total lack of any education is far "more than a minor discrepancy between the services a school provides to a disabled child and the services required by that child's IEP" in violation of the IDEA. *Johnson v. District of Columbia*, 962 F. Supp. 2d 263, 268 (D.D.C. 2013).

The Hearing Officer concluded that the District did not violate the IDEA because the District took "prompt action" to find an alternative location of services and Plaintiff offered no solution to the problem. HOD at 15-16. Neither the Hearing Officer nor the District point to any authority holding that an LEA's diligence shifts the burden to a plaintiff to find a school location for an eligible child. Yet that is effectively what the Hearing Officer held as a matter of law. Neither the expulsion, nor Plaintiff's lack of constructive suggestions, changed the fact that the District had an obligation to provide a FAPE to Mr. McDowell. The District therefore violated the IDEA by not providing a FAPE.

### B. *The Defense of Impossibility Does Not Apply*

"[L]egislation enacted pursuant to the spending power is much in the nature of a contract." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 2 (1981)). In *Arlington*, the Supreme Court held that states must accept conditions on spending related to the IDEA "knowingly and voluntarily" in the same way that parties "knowingly" agree to terms of a contract. 548 U.S. at 296. Based on the language and structure of the IDEA, the Court found that states did not

knowingly accept the condition that prevailing plaintiffs are entitled to expert costs. *See id.* at 296-300.

In arguing that the contract defense of impossibility applies here, the District stretches the Supreme Court's reasoning in *Arlington* past its logical breaking point. *See Brown v. District of Columbia.*, No. 17-cv-348, 2019 WL 3423208, at *16-18 (D.D.C. July 8, 2019) (finding that an impossibility defense "should be rejected on both legal and factual bases" in the IDEA context). The Court in *Arlington* imported a principle of contract law because that principle was helpful to clarify whether states agreed to pay for certain expert costs to prevailing plaintiffs in IDEA cases. *See Arlington*, 548 U.S. at 296. The Court did not purport to import the entirety of contract law as applicable to statutory schemes based on the Spending Clause. *See id.* As this Circuit has noted, "principles of contract law undoubtedly have a role to play" in cases involving the spending power. *Maryland Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985). The "role" of contract law is limited to providing helpful analogies when relevant. In many instances, however, the analogy will not work because "[u]nlike normal contractual undertakings, federal grant programs originate and remain governed by statutory provisions expressing the judgment of Congress[.]" *Id.* (quoting *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669 (1985)). A court must therefore rely on "the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties." *Id.* (quoting *Bennett*, 470 U.S. at 669).

The District is correct that a public agency may be relieved of its obligations to provide a FAPE in some circumstances, but that proposition does not support its defense of impossibility here. For example, the District will not provide a FAPE to an eligible child without parental consent, or to a child who has obtained a high school diploma. *See* 34 C.F.R. § 300.300

12

(requiring parental consent); 34 C.F.R. § 300.102(a)(3)(i) (providing an exception for children who have graduated from high school with a diploma). Those exceptions, however, exist because of "statutory provisions expressing the judgment of Congress," not a federal common law of contracts which applies to federal statutory schemes. *Maryland Dep't of Human Res.*, 763 F.2d at 1449 (quoting *Bennett*, 470 U.S. at 669). The District can point to no law or regulation allowing a defense of impossibility here.

The District is also correct that in at least one case, this Circuit excused the District from providing a FAPE based on contract principles, but that case is not helpful to its argument here. *See Hester v. District of Columbia*, 505 F.3d 1283, 1286 (D.C. Cir. 2007). Unlike the case at hand, *Hester* involved an actual settlement agreement between the child and the District. *See id.* at 1285. There, the Circuit found that an agreement between the District and a child to implement an IEP in a Maryland prison was made impracticable by Maryland's refusal to allow a District of Columbia education provider in the prison. *See id.* at 1285-86. The District can point to no contract between itself and Mr. McDowell which would allow a similar defense here.

Even if an impossibility defense could apply here, the District has still not shown that it has made a requisite showing because there is insufficient evidence of the first and third prongs of the defense. A party asserting impossibility must show "(1) the unexpected occurrence of an intervening act; (2) the risk of the unexpected occurrence was not allocated by agreement or custom; and (3) the occurrence made performance impractical." *E. Capitol View Cmty. Dev. Corp. v. Robinson*, 941 A.2d 1036, 1040 (D.C. 2008) (citations omitted). There must be "extreme circumstances" demonstrating that "performance is objectively impossible." *Id.* It does not apply when a "party subjectively claims the inability to perform." *Id.*

13

The District has not met the first requirement because the type of conduct shown by Mr. McDowell was expected by Congress and the District at the time Congress and the District entered into their purported "contract." The IDEA specifically mandates that states must still provide a FAPE to "children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). The IDEA also contemplates that some children with disabilities may "inflict[] serious bodily injury" upon others at school. 20 U.S.C. § 1412(k)(1)(G). Knowing that children could inflict bodily injury upon others and be expelled as a result, Congress still wrote the IDEA expansively to include "all disabled children, regardless of the severity of their disabilities." *Honig v. Doe*, 484 U.S. 305, 324 (1988) (citation omitted). Expulsion as a result of violence was thus foreseeable at the time of the "contract" and the defense of impossibility fails on this requirement alone.

The District has also not met the third requirement because there is insufficient evidence suggesting that providing a FAPE to Mr. McDowell is actually and objectively impossible. The undersigned is sympathetic to the challenges associating with finding a location of services for Mr. McDowell given his needs. The District asked ten schools whether they would accept Mr. McDowell, which is indeed "prompt" and appropriate action given difficult circumstances. HOD at 15. That still does not demonstrate that it is "impossible" to provide Mr. McDowell *any* education. The IDEA does not require "perfect compliance" in providing services to implement a child's IEP. *Johnson*, 962 F. Supp. 2d at 268. Unless there is some showing that these are "extreme circumstances" where no education can be provided, the District does not meet its burden to satisfy the third requirement of the impossibility defense. *E. Capitol View*, 941 A.2d at 1040 (citations omitted).

14

### C. *The Defense of Unclean Hands Does Not Apply*

"[H]e who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). The doctrine of unclean hands "closes the doors of equity to one who has acted inequitably or with bad faith relative to the matter in which he seeks relief." *Id.* It is within the discretion of a court "to deny equitable relief to a party who has not acted fairly and without fraud and deceit as to the controversy at issue." *Armenian Genocide Museum and Memorial, Inc. v. Cafesjian Family Found., Inc.*, 691 F. Supp. 2d 132, 159 (D.D.C.2010) (internal quotation marks and citation omitted). Parties seeking equitable relief need not lead "blameless lives" to avoid application of the doctrine. *Saint-Jean v. District of Columbia*, 846 F. Supp. 2d 247, 258 (D.D.C. 2012). Only conduct related to the controversy "which technically constitutes fraud, or which is unconscionable" will result in unclean hands. *Cochran v. Burdick*, 89 F.2d 831, 834 (D.C. Cir. 1937); *see also Saint-Jean*, 846 F. Supp. 2d at 258 (describing the standard as "a showing of truly unconscionable and brazen behavior") (internal quotation marks and citation omitted).

This defense fails here because applying the unclean hands doctrine would undermine the IDEA. Taken to its logical conclusion, the District's position would preclude any relief for a disabled child whose actions caused a disruption in progress towards goals outlined in the child's IEP. Mr. McDowell has a history of violent behavior, which led to difficulty in finding a location of services. HOD at 10-11. The behavior giving rise to his expulsion appears to be particularly extreme. *See id.* at 10. There is no evidence, however, of behavior that "constitutes fraud" or is "unconscionable," particularly because the parties do not dispute that Mr. McDowell's behavior was caused by his disability. *Cochran*, 89 F.2d at 834.

The undersigned is not aware of any authority—and the District cites none—supporting the proposition that disabled children and their parents can be precluded from pursuing their rights under the IDEA because a disability caused conduct leading to expulsion.[4]  Finding that such conduct could preclude relief would effectively contradict the IDEA.  A child expelled due to conduct resulting from a disability is still entitled to a FAPE.  Provisions of the IDEA apply to "*all* disabled children, regardless of the severity of their disabilities."  *Honig*, 484 U.S. at 324 (citation omitted).  Applying the doctrine of unclean hands in circumstances like these would mean that children with the most challenging disabilities would often be unable to vindicate their rights in court.  This would run counter to the spirit of, if not the explicit text of, the IDEA.  While the undersigned cannot foreclose the possibility that the doctrine could be applied in the IDEA context in some circumstances, it is inappropriate here because the purported fraudulent or unconscionable conduct was caused by Mr. McDowell's disability.

## VI.    RECOMMENDATION

For all of the foregoing reasons, the undersigned finds that Plaintiff has met her burden, by a preponderance of the evidence, to demonstrate that the record as a whole does not support the HOD.  Plaintiff has demonstrated that Mr. McDowell is entitled to a FAPE.  The District has attempted to relieve itself of the obligation to provide a FAPE by presenting two novel defenses, neither of which find support in the IDEA or in the underlying facts of this case.  In accordance with the applicable standard of review, the undersigned recommends that Plaintiff's Motion for

---

[4] The District seems to place some weight on the fact that Mr. McDowell is an "adult." *See* District of Columbia's Reply in Support of Its Cross Motion for Summary Judgment (ECF No. 17) at 6.  The IDEA generally defines eligible "children" as between the ages of three and twenty-one.  20 U.S.C. § 1412(a)(1)(A).  Mr. McDowell is therefore a "child" within the meaning of the IDEA.

16

Summary Judgment be granted, and that Defendant's Cross Motion for Summary Judgment be denied.

Thus, for all the foregoing reasons, it is, this 12th day of September, 2019,

**RECOMMENDED** that the Plaintiff's Motion for Summary Judgment (ECF No. 10) be **GRANTED,** and that this action be remanded to the District of Columbia Office of the State Superintendent of Education for determinations in accordance with the instant Report and Recommendation; it is

**FURTHER RECOMMENDED** that Defendant's Cross Motion for Summary Judgment (ECF No. 13) be **DENIED**.

DEBORAH A. ROBINSON
United States Magistrate Judge


**Within fourteen days, either party may file written objections to this report and recommendation. The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each objection. In the absence of timely objections, further review of issues addressed may be deemed waived.**