# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 10, 2007　　　　Decided October 19, 2007

No. 06-7102

ANTONIO HESTER AND
DALE WILLIAMS, FATHER OF ANTONIO HESTER,
APPELLEES

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01291)

———

　　*Mary T. Connelly*, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellants. With her on the briefs were *Linda J. Singer*, Attorney General, *Todd S. Kim*, Solicitor General, and *Edward E. Schwab*, Deputy Solicitor General.

　　*Emmanuel Nwazuo Agbara*, Student Counsel, argued the cause for appellees. With him on the brief was *Joseph B. Tulman*.

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:   In April 2001, Antonio Hester pled guilty in a Maryland court to two criminal offenses.  He was sentenced to incarceration in a Maryland prison.  At the time, Hester was a 17-year-old D.C. public school student receiving special education services from the District of Columbia under the federal Individuals with Disabilities Education Act.  After the Maryland criminal proceedings, D.C. reached an agreement with Hester that it would provide him with special education services in the Maryland prison.  This case arises because Maryland prison officials did not permit D.C.'s designated education providers into the prison; instead, Maryland provided Hester its own IDEA services.

Hester sued the District of Columbia, seeking "compensatory" special education services from D.C. to make up for the time he spent in the Maryland prison without services from D.C. – even though he received such services in prison from Maryland.  The District Court ruled for Hester. The court held that the 2001 agreement between D.C. and Hester contemplated that D.C. would provide special education services after Hester's release from incarceration if D.C.'s educational providers could not obtain access to the Maryland prison.  We disagree with the District Court's interpretation of the 2001 agreement, and we reverse.

I

The Individuals with Disabilities Education Act requires states and the District of Columbia, as a condition of their receiving federal special education funding, to provide disabled children with a "free appropriate public education." 20 U.S.C. § 1412(a). Antonio Hester, a D.C. student, was learning disabled and began receiving IDEA special education services from D.C. in 1994, when he was 10. *See* 20 U.S.C. § 1414(d).

In April 2001, at age 17, Hester pled guilty to criminal charges in Prince George's County, Maryland. The Maryland court sentenced him to 10 years in a Maryland prison, with a possibility of parole after five years.

Shortly after the sentencing, Hester filed an IDEA administrative request in the District of Columbia. He asked that D.C. provide him a free appropriate public education "while in the correctional institution." Hearing Officer Determination, No. 2001-0655 (May 31, 2001), Joint Appendix ("J.A.") 70; *see also* 20 U.S.C. § 1415(f). Hester and D.C. then reached an oral agreement about the special education services he would receive in prison, and the administrative hearing officer incorporated the agreement into a Hearing Officer Determination.

Under the 2001 agreement, the Certified Learning Center (CLC), a private organization that offers special education services, would educate Hester in the Maryland prison. *See* Hearing Officer Determination, J.A. 71. The agreement further stated that D.C. would "forward a letter" to Maryland correctional authorities requesting facilities in which CLC could meet with Hester. *Id.* at 72. But the agreement did not

specify a course of action if D.C. officials could not obtain access to the Maryland prison.

Problems arose when CLC Director Patricia Felton attempted to carry out the agreement. When Felton initially met with Daphne Matthews, principal of the Maryland prison's education program, Matthews cautioned that CLC educators may not be allowed into the prison. Felton followed up with many phone calls to Matthews. But Matthews responded that she "simply couldn't get [CLC] instructors in to facilitate the instruction," in part due to security concerns. Hearing Transcript (March 19, 2004), J.A. 175. Matthews told Felton that Maryland officials instead were developing their own IDEA Individualized Education Program (IEP) for Hester.

In 2001, Maryland officials developed the IEP for Hester; in 2002 and 2003, they reviewed and revised the plan. *See* 20 U.S.C. § 1414(d)(4)(A)(i) (requiring that the local educational agency review a child's IEP "not less frequently than annually"). Hester participated in all three Maryland IEP meetings, and his attorney represented him at the 2002 and 2003 meetings. Consistent with the Maryland IEP, Hester received special education services from Maryland while in the Maryland prison.

In December 2003, Hester filed an IDEA administrative complaint against the District of Columbia challenging D.C.'s failure to provide him with the services required under the 2001 agreement. Reasoning that Maryland did not allow CLC into the prison and noting that Maryland provided IDEA education services to Hester, the administrative hearing officer found that D.C. did not breach the 2001 agreement.

Hester then sued the District of Columbia, requesting special education services from D.C. to make up for the time he spent in the Maryland prison without receiving services from D.C. Complaint, *Hester v. District of Columbia*, No. 04-1291 (D.D.C. July 30, 2004). The District Court granted summary judgment to Hester based on its interpretation of the 2001 agreement: "Foreseeing that [Maryland prison officials] might not permit CLC to enter the facility to provide educational services to Hester, the parties agreed that the educational services could be provided in the form of compensatory education after Hester's release." *Hester v. District of Columbia*, 433 F. Supp. 2d 71, 76 (D.D.C. 2006).

We review de novo the District Court's interpretation of the 2001 agreement and its grant of summary judgment. *See Tax Analysts v. IRS*, 495 F.3d 676, 679 (D.C. Cir. 2007); *KiSKA Const. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1158 (D.C. Cir. 2003). The agreement is a contract governed by D.C. law. *See Makins v. District of Columbia*, 277 F.3d 544, 547-48 (D.C. Cir. 2002).

II

While Hester was serving time in the Maryland prison, Maryland assumed responsibility for Hester's education and did not allow D.C.'s designated education providers into the prison. *See* 34 C.F.R. § 300.2 (applying IDEA to state and local correctional facilities); *see also* 20 U.S.C. § 1412(a)(11)(C); 34 C.F.R. § 300.149. Because Maryland officials made it impracticable for D.C. to provide special education services in the prison, D.C. did not breach its 2001 agreement with Hester: "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his

duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981); *see also Bergman v. Parker*, 216 A.2d 581, 583 (D.C. 1966); *Whelan v. Griffith Consumers Co.*, 170 A.2d 229, 230 (D.C. 1961); RESTATEMENT (SECOND) OF CONTRACTS § 264 ("If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.").

In an attempt to avoid straightforward application of the contract impracticability doctrine, Hester advances three arguments. None is persuasive.

*First*, Hester argues – and the District Court agreed – that the 2001 agreement required D.C. to provide Hester with special education services after his release from prison if D.C. did not provide such services in prison. We do not read the agreement that way. The agreement refers repeatedly to Hester's confinement, explaining that D.C. will provide services to him "while in the correctional institution," "while he is incarcerated in Maryland," and "while Antonio is incarcerated." Hearing Officer Determination, No. 2001-0655 (May 31, 2001), J.A. 70, 71, 72. And more to the point, the agreement by its terms says nothing to suggest that D.C. would provide services after Hester's release from prison in the event Maryland declined D.C.'s request for access to Hester and instead decided to provide special education services itself. We therefore reject Hester's argument that the terms of the agreement required D.C. to provide special education services after Hester's release from the Maryland prison.

*Second*, according to Hester, D.C. admitted in the district court that the 2001 agreement contemplated services after Hester's release from prison.  Hester points to his statement of undisputed material facts in support of summary judgment, which purportedly asserted that D.C. had agreed to provide services after Hester's release if D.C. could not provide services to Hester in prison.  And Hester suggests that D.C. conceded this factual point by not contesting it in opposition to Hester's summary judgment motion.  *See* U.S. Dist. Ct. for D.C. Local R. 7(h) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").  The waiver argument rests, however, on a mistaken premise:  Hester's statement of undisputed material facts in support of summary judgment made no such claim about the 2001 agreement; this assertion instead appeared in Hester's statement of material disputed facts in *opposition* to *D.C.'s* summary judgment motion.  For that reason, D.C. had no obligation or occasion to controvert this contention in its opposition to Hester's summary judgment motion.  In short, D.C. has consistently maintained that the 2001 agreement did not contemplate services after Hester's release from the Maryland prison; D.C. has never waived the argument.

*Third*, Hester contends that D.C. did not live up to its obligations under the 2001 agreement, thus requiring D.C. to compensate for the breach by providing him with special education services after his release from prison.  Hester argues that the agreement obligated D.C. to do more to obtain access to the Maryland prison; in particular, Hester notes that the agreement specifically required D.C. officials to "forward a letter" to Maryland officials requesting facilities for CLC to meet with Hester in prison.  To begin with, Hester's argument

overlooks the extensive personal efforts of CLC Director Patricia Felton (on behalf of D.C.) to obtain access to the prison – efforts that went well beyond what the agreement required, albeit ultimately to no avail. In any event, even assuming that D.C. did not fully meet its obligation to "forward a letter," the Maryland officials repeatedly and definitively stated that D.C.'s designated education providers would not be allowed into the prison, in part because of security concerns. As a result, D.C.'s mere failure to forward a letter to Maryland plainly did not cause Hester's inability to obtain special education services from D.C. while in prison, and thus cannot be a basis for now requiring D.C. to provide "compensatory" special education services to Hester. *See* RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. e ("Recovery can be had only for loss that would not have occurred but for the breach."); *cf. Anda v. Ralston Purina Co.*, 959 F.2d 1149, 1152-53 (1st Cir. 1992).

\* \* \*

We understand and appreciate the desire of Antonio Hester, his family, and his representatives to secure additional special education services. But the 2001 agreement between D.C. and Hester does not entitle Hester to such services from D.C. We therefore reverse the judgment of the District Court, remand, and direct that the District Court grant D.C.'s cross-motion for summary judgment.

*So ordered.*