# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 7, 2008          Decided March 6, 2009

No. 07-7163

CALVERT L. POTTER, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA,
APPELLANT

Consolidated with No. 07-7164

Appeals from the United States District Court
for the District of Columbia
(No. 01cv01189)

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellant. With him on the briefs were *Peter J. Nickles*, Interim Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

*Joshua A. Doan*, argued the cause for appellees. With him on the brief were *William D. Iverson* and *Arthur B. Spitzer*.

Before: ROGERS and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Senior Judge* WILLIAMS.

ROGERS, *Circuit Judge*:  The District of Columbia requires its firefighters and emergency medical service ("EMS") workers (together "firefighters") to be clean shaven.  A number of firefighters who wear beards for religious reasons challenged this requirement under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA").  The district court granted summary judgment to the firefighters upon finding that the District of Columbia had not shown a material issue as to whether the requirement was narrowly tailored. Specifically, the district court found the District of Columbia had conceded the safety for bearded firefighters of one form of respirator (known as a "SCBA").  We agree the District of Columbia failed to satisfy its burden in opposing summary judgment by setting forth specific evidence showing a triable issue of fact as to the safety of the SCBA, and we affirm.

**I.**

Because this case centers on the efficacy of certain safety equipment for bearded firefighters, it is helpful first to describe the environments in which firefighters work and the protective equipment they use.  We then turn to the district court proceedings, focusing particularly on the District of Columbia's position regarding the safety of the self-contained breathing respirator.  Upon setting forth our standard of review, RFRA requirements, and the non-moving party's burden in opposing summary judgment, we review the record to determine whether

the District of Columbia raised a material issue of disputed fact about the safety of SCBAs for bearded firefighters.

**A.**

Firefighters encounter dangerous atmospheres. The most dangerous areas, classified as "immediately dangerous to life and health," include all active fires, other oxygen-deprived environments, and settings in which highly toxic contaminants may be inhaled. Other areas pose a lesser threat, and still other areas pose no threat at all. When firefighters do not know the threat posed by an environment, they must treat it as immediately dangerous to life and health.

Firefighters can protect themselves by using a number of forms of respiratory equipment, all of which use the same tight-fitting face mask. The most powerful, a self-contained breathing apparatus, or SCBA, consists of an air tank, a regulator, and a mask. A SCBA is designed to maintain "positive pressure" in the face mask — that is, the atmospheric pressure is greater inside the mask than outside. Testimony from both parties indicates that, as a result, a leak in the seal of the face mask will cause clean air to leak out of the mask into the outside atmosphere, rather than allowing contaminated outside air to leak in. The District of Columbia's "respiratory protection plan" requires firefighters to use SCBAs in environments that are actually or potentially immediately dangerous to life and health, although EMS workers are not trained at all in the use of SCBAs.

Although this appeal focuses on the safety of SCBAs for bearded firefighters, much of the district court proceeding concerned the safety of two other systems: An air-purifying filter, or APR, consists of a mask and a filter through which the user breathes. An APR relies on the negative pressure created by inhalation to draw outside air through the filter. A powered

air-purifying filer, or PAPR, operates like an APR, but uses a battery-powered fan to force air through its filter. It is thus designed to create positive pressure inside the mask.

**B.**

In 2001, the D.C. Department of Fire and Emergency Medical Services implemented a "grooming policy" that prohibited beards. A number of firefighters challenged the policy under RFRA, and the district court preliminarily enjoined enforcement of the policy. The Department accommodated the plaintiffs for a time but in 2005 issued a separate "safety policy," which forbade Department employees who use "tight-fitting facepieces" to have "facial hair that comes between the sealing surface of the facepiece and face." The firefighters sought various forms of relief including a permanent injunction and clarification as to whether the 2001 injunction on the grooming policy also applied to the new safety clean-shaven policy. The District of Columbia moved for a judgment as a matter of law declaring the new policy not in violation of RFRA.

On August 11, 2005, based on extensive briefing and a daylong hearing, the district court modified the 2001 injunction to allow the Department to assign to administrative duty employees who could not pass "face-fit tests," and also to require the Department to afford the firefighters a reasonable opportunity to demonstrate they could pass the tests. *Potter v. District of Columbia*, 382 F. Supp. 2d 35 (D.D.C. 2005). In its opinion, the district court stated:

> It is undisputed that firefighters who wear beards can safely operate the *positive* pressure self contained breathing apparatus (SCBA) that firefighters use in situations considered to be immediately dangerous to life and health [in part because] any break in the seal between a firefighter's face and his SCBA mask will

cause air from the tank to blow out, due to positive pressure, preventing air from the surrounding environment from entering the mask. The disagreement in this case concerns the safe operation of *negative* pressure masks by firefighters.

*Id.* at 39 (emphasis added). A month later, a group of EMS workers sued to establish that the modified injunction applied to them, and the district court consolidated the cases. Considerable wrangling followed, as some plaintiffs passed the fit tests, some failed subsequent tests, and both parties moved for summary judgment — the District of Columbia on July 7, 2006, with the firefighters responding on October 13, 2006 and cross-moving for summary judgment on October 16, 2006.

The district court granted summary judgment to the firefighters. *Potter v. District of Columbia*, Nos. 01-1189, 05-1792, Mem. Op. at 2 (D.D.C. Sept. 28, 2007) ("2007 Mem. Op."). As in the 2005 opinion, the district court reasoned that because "the Department now apparently concedes that the positive pressure in the SCBA system is adequate to protect the bearded firefighter from any leakage that may be caused by facial hair," the case turned on whether bearded firefighters could safely wear APRs, and whether they need to do be able to do so. *Id.* at 13. The District of Columbia had argued that its clean-shaven policy was necessary because firefighters must be able to safely use APRs so that they could work for long periods in an environment, such as the aftermath of a terrorist attack, which is not imminently dangerous to life and health but still poses a threat. Mem. in Opp'n to Pls' Mot. for Summ. J. 10-11. The district court concluded that the clean-shaven policy was not sufficiently narrowly tailored, as required under RFRA, because in such an environment the Department could redeploy bearded firefighters out of the zone in which APRs would be required, either "up" into areas in which SCBA systems were

required, or "down" into areas in which no protection was needed. 2007 Mem. Op. at 23. The district court denied the District of Columbia's motion for reconsideration, and the District of Columbia appeals.

## II.

On appeal, the District of Columbia does not challenge the district court's finding that bearded firefighters could be redeployed away from areas in which a negative-air pressure mask (ARP) is required. Instead it contends that it never conceded bearded firefighters can safely use SCBAs and indeed argued the opposite. Thus it maintains that summary judgment was inappropriately granted because it raised a genuine issue of material fact as to the safety for bearded firefighters to wear any type of tight-fitting face mask, regardless of whether the mask is used in a positive or negative configuration.

## A.

This court reviews the grant of summary judgment *de novo*, *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO,* 548 F.3d 137, 143 (D.C. Cir. 2008). The firefighters' suggestion that our review is confined to the lenient abuse of discretion standard misconceives the issue before the court. They offer that the district court's denial of reconsideration — wherein the District of Columbia first objected as it does on appeal that it had never conceded SCBAs are safe for bearded firefighters — was "a case-management ruling" disallowing an opportunity for the District of Columbia to change its position, and as such reviewable only for abuse of discretion, *see, e.g., Nat'l Westminister Bank, PLC v. United States*, 512 F.3d 1347, 1363 (Fed. Cir. 2008); *Berry v. Dist. of Columbia*, 833 F.2d 1031, 1037 n.24 (D.C. Cir. 1987). As the firefighters see it, the propriety of the rejection is "the only real issue" now. Appellees' Br. 24, 26. It is true that if this court agrees the

District of Columbia conceded the safety of SCBAs for bearded firefighters, then our review of the district court's decision not to allow the District of Columbia to raise the issue anew would be for abuse of discretion. *See Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 n.9 (D.C. Cir. 1991). This appeal turns on a different question, however. This court must determine whether the District of Columbia made an affirmative showing of the opposite. Put differently, this court must decide whether the District of Columbia's contention that SCBA systems are not safe really is a new argument. That issue, integral to the district court's ruling on the merits of summary judgment, must be reviewed *de novo*. *Id.*

Under RFRA, the federal government and the District of Columbia[1] may not substantially burden a person's exercise of religion unless the government "demonstrates that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1; *see Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). The statute makes clear that "the term 'demonstrates' means meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C. § 2000bb-2(3). The parties agree that the firefighters wear beards because of sincere religious beliefs and that their safety and the safety of those they assist is a compelling government interest. The issue on which the appeal ultimately turns, then, is whether the clean-shaven requirement is the least restrictive means to protect the safety of firefighters.

---

[1] After *City of Boerne v. Flores*, 521 U.S. 507 (1997), RFRA does not apply to state governments. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 n.1 (2006).

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see* FED, R. CIV. P. 56(c). Because RFRA obliges the government to show that a policy that burdens religious freedom is the least restrictive means to further a compelling interest, the District of Columbia can only survive a summary judgment motion by showing that it has established a genuine issue as to whether its clean-shaven requirement is narrowly tailored to further the interest of protecting firefighters — that is, it must demonstrate it argued and proffered evidence to show that SCBAs are not safe for bearded firefighters. *See* FED, R. CIV. P. 56(e). It will not suffice to make that argument for the first time on appeal, *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 680 (D.C. Cir. 1985), for while review of the grant of summary judgment is *de novo*, this court reviews only those arguments that were made in the district court, absent exceptional circumstances, *see Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007); *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 n.5 (D.C. Cir. 1992); *see also* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2716 at 282-85 & nn.12-13 (3d ed. 1998).

**B.**

On appeal, the District of Columbia suggests two possible reasons that SCBAs might be unsafe for bearded firefighters: (1) a firefighter might "overbreathe" his respirator by inhaling so vigorously that the regulator is unable to supply sufficient clean air to maintain positive pressure, thus drawing in contaminated air through a leak in the face mask seal, or (2) even if positive pressure is maintained, a leak of clean air out of the mask will

exhaust the air supply more quickly than would otherwise happen. *See* Appellant's Br. 13. However, the record shows the District of Columbia never advanced, and in fact disavowed, any arguments to that effect before the summary judgment stage.

In a motions hearing in 2005, the Assistant Attorney General explicitly disavowed any claim that SCBAs were dangerous for bearded firefighters either because any leaks would shorten the tank life of SCBA gear or because there was a low-level long-term risk associated with that gear. The Assistant stated, "that's not what we're worried about," and clarified that the District of Columbia's policy was instead necessary for "a situation where [firefighters] have to go into a contaminated area for an extended period of time, [like] the World Trade Center," — i.e., a situation that the District of Columbia maintained would require the use of APRs. Mot. Hr'g Tr. 6 (June 13, 2005). In the evidentiary hearing shortly thereafter, Fire Safety Officer Captain William Flint described the effect of the positive-pressure SCBA system this way: "[I]f there is a leakage there, the air will then move out from the inside of the face piece, protecting the wearer from toxic atmospheres." Mot. Hr'g Tr. 89 (Aug. 1, 2005). The firefighters' expert had declared in 2001 that SCBAs are safe for bearded firefighters for the same reason. Decl. of Alexander Santora (May 25, 2001).

Given these representations by the District of Columbia and the evidence from the firefighters, it is little wonder that the district court soon afterwards summarized the case as focused on the safe operation of negative-pressure systems, i.e., APRs, because it was "undisputed that firefighters who wear beards can safely operate" positive-pressure SCBAs. *Potter,* 382 F. Supp. 2d at 39. Indeed, the District of Columbia affirmatively adopted this framing of the issue in its 2006 motion for summary judgment, arguing that the evidence showed that "None of the

Plaintiffs Can Safely [Wear] Issued *Negative Pressure Face-Pieces*." *Id.* (emphasis added).

Of course, the District of Columbia was free to take a different position in opposing the firefighters' motion for summary judgment, and it is its position in opposition that is relevant here. *See Hester v. District of Columbia*, 505 F.3d 1283, 1287 (D.C. Cir. 2007). It could have done so in its response to the firefighters' statement of undisputed facts or in its memorandum in opposition to summary judgment. It did not meet its burden in either. Under Rule 7(h) of the district court's local rules, the moving party must submit a statement of material facts as to which it asserts there is no genuine issue, D.D.C. R. LCvR 7(h), and the district court may accept these facts as true if the opposing party does not dispute them, *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (construing predecessor to local rule 7(h)); *see* FED. R. CIV. P. 56(e).

The firefighters asserted in paragraph 5 of their Rule 7(h) statement that because a SCBA "supplies a continuous flow of pressurized air," any imperfection in the mask seal would result in air flowing out of the mask, rather than in, and that "[i]t is therefore not dangerous for a firefighter to work in a hazardous environment using a[] SCBA." Pls.' Statement of Undisputed Material Facts In Support of Pls.' Mot. for Summ. J. at ¶ 5. They cited their expert's testimony to this effect as well as the District of Columbia's statement that SCBAs present no imminent danger to bearded firefighters and that the clean-shaven policy was not designed to address any problems arising from SCBA devices. The firefighters thus offered evidence showing an absence of a genuine dispute about SCBA safety.

In response, the District of Columbia did not directly address the assertion that it is safe for firefighters to use a SCBA. Instead, its Rule 7(h) statement generally disputed "the statements in paragraph 5" and went on to explain that a SCBA does not supply "a continuous flow of pressurized air," but only supplies air when the pressure in the mask falls below a certain level, presumably when the user inhales in a well-sealed mask. Def.'s Resp. to Pls.' Statement of Material Facts to Which There Is No Genuine Issue at 3. The response clarified that "[i]f an acceptable seal is not maintained, an inward flow of air comes through the regulator during exhalation or during the pause between breaths. This feature of the pressure-demand regulator helps to conserve the supply of air carried on the wearers [sic] back." *Id.* The expert declaration supported these statements.

On appeal, the District of Columbia contends its Rule 7(h) response suggested the possibility of pulling contaminated air into the face mask through "overbreathing." Fairly read, and according all reasonable inferences to the District of Columbia as the non-moving party, its response cannot support this reading. Instead, the response simply addresses whether a properly functioning SCBA system supplies air all the time or only when a user inhales, pointing out that the firefighters had incorrectly stated that SCBAs supply air continuously when in fact they supply air only as needed. The response does not contradict the fundamental notion that SCBAs can be worn safely by bearded firefighters in hazardous environments. Indeed, the last sentence of the Rule 7(h) statement — "[t]his feature of the pressure-designed regulator helps to conserve the supply of air carried on the wearer's back" — renders the response susceptible only to the interpretation that the District of Columbia was explaining the mechanism by which clean air enters the face mask from the tank. Further, the text cannot support the District of Columbia's reading as addressing "overbreathing" because the response stated that an imperfect

seal would cause air to come through "the regulator," i.e., from the air tank, through the regulator, into the mask, not from the outside atmosphere into the mask. Given the opportunity and the burden to dispute the safety of SCBAs, the District of Columbia instead offered only a technical quibble that did not reach the fundamental issue. On summary judgment, the district court is to give credence to uncontradicted and unimpeached evidence supporting the moving party, and so the district court could properly take the firefighters' assertion of SCBA safety as true. *See Jackson*, 101 F.3d 145 at 154.

The District of Columbia also failed in its memorandum in opposition to summary judgment to show that the safety of SCBAs was a genuine disputed issue. On appeal, the District of Columbia points out that its memorandum stated that "[e]ven when used in a positive pressure configuration, use of a tight fitting face-piece [with a beard] presents an unacceptable risk to the wearer's health." In isolation this statement about positive-pressure systems appears to support the District of Columbia's position that it contested the safety of SCBAs. Viewed in context the more likely interpretation is that the response focused on the "powered air-purifying respirator" ("PAPR"), another positive-pressure system that was a primary point of contention in the litigation, although the statement could nonetheless plausibly have resuscitated an argument that SCBAs were unsafe. But if this statement was intended as such an assertion, it was unsupported by evidence because it is followed by a citation to paragraphs 23 and 24 of Dr. McKay's declaration, which do not address SCBAs, or even positive-pressure systems in general, but rather the possible long-term health effects to which firefighters may be exposed through the use of ill-fitting face masks — effects that would presumably apply to both positive- and negative-pressure systems. Certainly there is no trace of evidence regarding overbreathing or premature air tank depletion, the pitfalls the District of

Columbia now maintains it addressed. Thus, if in this single sentence the District of Columbia was (1) recanting its earlier representation that the clean-shaven policy was not designed to address safety concerns related to SCBA use and that no such concerns exist, (2) arguing that the clean-shaven policy was in fact designed to address such concerns, and (3) contesting the safety of SCBA devices specifically, the District of Columbia offered only the kind of "merely colorable or not significantly probative" evidence that is insufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986) (citations omitted).

As regards other evidence referenced by the District of Columbia on appeal, it was not cited in opposing the firefighters' motion for summary judgment. For example, the testimony by Captain Flint that a tight face seal is important because a face mask leak in a SCBA system could hasten the exhaustion of the air supply: "[R]educed service life is an issue as well, and we need to make sure that we're maintaining as much air as possible in the cylinder, which then gets in to the firefighter's lungs, instead of wasting it by letting creep outside of the face piece." Mot. Hr'g Tr. 102 (Aug. 1, 2005). None of the District of Columbia's pleadings or oral argument in the district court cited this testimony or argued that cannister depletion is a safety concern, or indeed a concern at all. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1084 (D.C. Cir. 1984); *NRM Corp.,* 758 F.2d at 680. The District of Columbia bore the burden of pointing to evidence that could create an issue of material fact as to the safety of SCBAs and arguing that the safety issue remained; evidence laying dormant in the record is not enough, for the district court is not "obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and

determination of what may, or may not, be a genuine issue of material disputed fact." *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988); *see Jackson*, 101 F.3d at 151. In any event, at most, Captain Flint's statement could be evidence that would support an argument about safety, but the testimony alone is not itself such an argument, especially given that shortly before the testimony, the Assistant Attorney General disavowed any safety concerns based on premature canister depletion. Mot. Hr'g Tr. at 6 (June 13, 2005) ("Now you will have the lifetime that you can spend in a fire reduced, because every time there's a break in the seal and the air has to blow, that's air that's not in your tank, but maybe an hour tank will last 45 minutes. That's not what we're worried about.").

The District of Columbia also points to scientific articles, federal safety regulations, and manufacturer directions referenced by two declarations by Dr. McKay. All but one of these sources (the NIOSH standards) were cited by Dr. McKay in his first declaration in 2005 but not resubmitted or even referenced in the District of Columbia's opposition to summary judgment. Moreover, Dr. McKay's declaration appears to cite these sources for the general proposition that beards may compromise a face mask seal and therefore the efficacy of respirators, without distinguishing between risks for negative- and positive-pressure systems. *See* Decl. of Roy T. McKay, Ph.D at ¶ 16 (Sept. 27, 2005) ("The scientific literature clearly and consistently recognizes the fact that facial hair at the sealing surface of a respirator causes increased respirator leakage. Such leakage decreases the expected performance of the respirator . . . ."); *e.g., id.* (quoting
article, "It is concluded that persons with excessive  facial hair . . .  cannot expect to obtain as high a degree of respirator performance as persons who are clean shaven"); *id.* at ¶ 19 ("Numerous standards and guidelines prohibit the presence of facial hair at the sealing surface of a tight fitting respirator.").

In another context, this might suffice to create a genuine issue of material fact as to the safety of SCBAs, because concerns as to the greater category (all systems that use tight-fitting masks) would include concerns as to the lesser (SCBA systems in particular). However, throughout the litigation both parties and the district court were careful to distinguish between negative- and positive-pressure systems and their effects; witnesses for both parties testified or declared that leaks in SCBAs did not result in breathing contaminated air, Mot. Hr'g Tr. 89 (Aug. 1, 2005), and the district court and the summary judgment pleadings expressed an understanding that the case turned on the safety of negative-pressure APRs, not SCBAs, *see* Def.'s Mem. in Support of Sum Judg. at 15 (July 7, 2006). Against this background, the district court could only interpret Dr. McKay's declaration and the supporting information, both submitted almost two years earlier, as expressing general concern about the safety of tight-fitting face masks and thus relevant to the safety of APRs, not SCBAs.

The District of Columbia notes that one scientific article does discuss specific risks of SCBA systems for bearded users, B.J. Held, *Facial Hair and Breathing Protection,* INT'L FIRE CHIEF, Dec. 1980, at 25, 26-27, and that NIOSH standards discourage the use of "pressure-demand respirators" with facial hair, NANCY BOLLINGER, U.S. DEP'T OF HEALTH AND HUMAN SERVS., NAT'L INST. FOR OCCUPATIONAL SAFETY & HEALTH, NIOSH RESPIRATOR SELECTION LOGIC 48 (2004). Although these two sources were attached to Dr. McKay's 2005 declaration, he did not discuss the safety of SCBA systems or point to that aspect of the article or report. *See* McKay Decl. at ¶ 16 (Sept. 27, 2005) (noting Held study "[r]eviewed the variability in facial hair leakage with respect to" five factors). At no point before or during the summary judgment proceedings did the District of Columbia cite the portions of either source that address SCBAs, nor argue that those sources

demonstrated SCBAs are unsafe. Like the testimony of Captain Flint, this information lay fallow in the record, and a reversal of summary judgment cannot rest on arguments that the District of Columbia could have, but did not, develop based on the factual record it produced in the district court. *Jackson*, 101 F.3d at 151; *Twist*, 854 F.2d at 1425.

Under exceptional circumstances, a federal appellate court will consider arguments against summary judgment not made in the district court. *See Singleton*, 428 U.S. at 120; *E.I. Du Pont*, 958 F.2d at 419 n.5. The District of Columbia has not contended on appeal, much less demonstrated, that such exceptional circumstances exist here. Nor has it contended that the district court abused its discretion in not allowing this objection to be raised for the first time in a motion for reconsideration. Instead, the District of Columbia contends it disputed the safety of SCBAs all along, including in its opposition to summary judgment. The record shows otherwise. Accordingly, because the District of Columbia did not carry its burden in opposing summary judgment to establish an issue of material issue regarding the safety of SCBAs, summary judgment for the firefighters was appropriate and we affirm.

WILLIAMS, *Senior Circuit Judge*, concurring: The record here unequivocally discloses a disputed issue of material fact. Yet the district court granted summary judgment. If the sole aim of the law were an open search for truth, we would plainly reverse.

The plaintiffs claim that a policy of the District of Columbia requiring that firefighters be clean-shaven violates their rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. The District acknowledges that the plaintiffs' religious aversion to being clean-shaven is sincere, and no one disputes the proposition that the District's interest in safety—that of the plaintiffs themselves, fellow workers whose safety is linked to their performance, and the citizenry at large—is compelling. For the reasons developed in the court's opinion, the case comes down to whether bearded firefighters can safely rely on a self-contained breathing apparatus ("SCBA"). Before us the District contends that it should have had a chance to prove at trial that with a bearded wearer the SCBA poses serious safety risks for which the District's policy is the least restrictive solution. Unfortunately for the District, its own muddled litigation strategy rendered summary judgment for the plaintiffs a legitimate outcome.

With their motion for summary judgment plaintiffs submitted their "Statement of Material Facts," describing a SCBA as

> suppl[ying] a continuous flow of pressurized air from tanks worn by firefighters into their facemasks, so that any minor imperfections in the facemask's seal will result in an outward flow of clean air from the mask, rather than an inward flow of potentially dangerous gases or particulates. It is therefore not dangerous for a firefighter to work in a hazardous environment using an SCBA.

Joint Appendix ("J.A.") 110–11 ¶ 5. If this were undisputed, the District's safety claim (at least as they frame it here) would dissolve. But the District disputed plaintiffs' statement, saying,

> The Defendant disputes the statements in paragraph 5. A SCBA does not supply 'a continuous flow of pressurized air;' rather, pressure-demand regulators are designed to provide breathing air into the facepiece when the pressure in the facepiece falls below a pre-defined (positive) value. If an acceptable seal is not maintained, an inward flow of air comes through the regulator during exhalation or during the pause between breaths. This feature of the pressure-demand regulator helps to conserve the supply of air carried on the wearers [sic] back.

*Id*. at 111 ¶ 5. In support, the District relied on an expert declaration, which labeled the plaintiffs' assertion as "incorrect" and explained that "[w]hen an acceptable seal is maintained, no inward flow of air comes through the regulator during exhalation or during the pause between breaths." *Id*. at 120 ¶ 22.

The District's response is susceptible of two interpretations. On the one hand, the District could have been simply correcting a rather inconsequential technical detail— clarifying, in other words, that there are times when no air is supplied through the regulator. On the other hand, the District could have been saying that, absent an acceptable seal, the user is at risk of breathing in contaminated outside air. The references to air from the "regulator" and conservation of air supply favor the first interpretation; but the pointlessness of correcting plaintiffs' technical error, prefaced by the claim to "dispute[]" their contention, supports the second. The balance favors the first interpretation, legitimating the grant of summary judgment to the plaintiffs.

But the record also contains scholarly work making the second interpretation far more plausible. The District's expert, Roy T. McKay, in his first declaration identified a number of articles on "the science of facial hair and the negative performance it has on respiratory protection," *id*. at 87, among them Bruce J. Held, *Facial Hair and Breathing Protection*, Int'l Fire Chief, Dec. 1980, at 25, J.A. 90 (reporting on research at Lawrence Livermore National Laboratory under contract W-7405-ENG-48). According to Held, "a person doing moderately heavy to heavy work can 'overbreathe' the air supply if there is a leak, and suck or pull in outside contaminated air through the leak." J.A. 92.

McKay's citation and provision of the Held article came, to be sure, in a declaration that didn't call attention to the "overbreathing" problem. It would thus have required a good deal of digging on the part of the district court to discover Held's expert conclusion on the matter. To avert the need for such digging, the district court's Local Rule 7(h) states:

An opposition to [a summary judgment] motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.

The rule embodies the thought that judges "are not like pigs, hunting for truffles buried in briefs" or the record. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

However buried the Held article may have been, though, the record clearly alerted the court to the Occupational Safety and Health Administration's belief that facial hair poses risks for the use of respirators generally. As the district court noted

in its 2005 opinion, the District's disputed order simply requires firefighters to

> comply with the face-fit requirements of 29 C.F.R. § 1910.134, which is the OSHA regulation for "respiratory protection." That regulation provides, at § 1910.134(g)(1)(i), that
>
>> The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have:
>>
>> (A) Facial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function.

*Potter v. District of Columbia*, 382 F. Supp. 2d 35, 40 (D.D.C. 2005).

The OSHA regulation, to be sure, appears not to govern the District's firefighters. 29 U.S.C. § 652(5) excludes state employees generally, and § 652(7) explains that the term "state" includes the District. Although under some conditions Environmental Protection Agency regulations may extend coverage to otherwise exempt workers, see 40 C.F.R. §§ 300.5, 300.150(d), the District has made no real effort to show that those conditions are applicable to plaintiffs. The regulation—on which the District's own policy was based—nonetheless plainly reflected OSHA's judgment that facial hair poses excessive risk.

Moreover, the OSHA regulation clearly rested on the agency's concern with "overbreathing." Explaining its decision to require fit testing with positive-pressure respirators, OSHA observed:

Even positive pressure respirators do not always maintain positive pressure inside the facepiece, particularly when facepiece fit is poor, strenuous work is being performed, and overbreathing of the respirator occurs . . . . Leakage must be minimized so that users consistently achieve the high levels of protection they need.

63 Fed. Reg. 1152, 1223/2 (1998). OSHA's explanation for its decision went on at length, and its position was firm.

While a judge isn't a pig hunting for truffles in the parties' papers, neither is he a potted plant. A judge on notice of a contradiction between the plaintiffs' position and the views of a federal agency might hesitate to find the issue wholly undisputed. And the district court in this case was not passive across the board. In accepting the plaintiffs' theory that bearded firefighters could be quickly redeployed either to areas requiring the use of SCBAs or to areas not requiring any respirators, it reached back for evidence introduced over two years earlier, in a different context, and not identified in the plaintiffs' summary judgment motion. See Tr. of Status Conf., Nov. 29, 2007, at 4–5 (explaining that evidence introduced in the August 1, 2005 hearing "is what informed the plausibility of the reassignment plan that I talked about" in the September 28, 2007 memorandum opinion). While this variance in the court's zeal is troubling, the District rests no claim on the fact, and such a claim, even if made, would likely not justify a different result. Departures from passivity are almost always bound to give one side a net benefit, yet such departures are not ipso facto error. *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992) ("[Judges] should not be criticized when they point out to counsel a line of argument or inquiry that he has overlooked, although they are not obligated to do so. . . . When the unfolding evidence persuaded the district judge that the plaintiff's counsel had misidentified the RICO enterprise, she could without impropriety have invited him to

6

shift the line of his attack . . . ." (internal citations omitted)); cf. *United States v. Carson*, 455 F.3d 336, 355 (D.C. Cir. 2006) (explaining that the "threshold for a showing of bias is high"—the judge's conduct must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible" (quoting *United States v. Edmond*, 52 F.3d 1080, 1099 (D.C. Cir. 1995), and *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

The outcome, nonetheless, seems extraordinarily unsatisfactory. Looking on the bright side, one might see it as constituting a semi-natural experiment, in which the District of Columbia will fight calamities with some of its firefighters bearded, while other firefighting entities adhere to OSHA's rule or its equivalent. Perhaps the difference will prove inconsequential. The experiment is far from ideal, however. Most obviously, the likelihood of acute calamity—and thus the risk that response teams will be stretched to the breaking point—seems greater in the District than almost any other American city.

Of course even a permanent injunction is not irredeemably permanent. The Federal Rules of Civil Procedure allow judges to "relieve a party or its legal representative from a final judgment, order, or proceeding" if, among other things, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The rule applies to a permanent injunction as long as a party seeking relief "can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). While the exact nature of such a change may be hard to imagine, there is at least some comfort in the hope that the experiment launched by this judgment will end without having falsified the plaintiffs' theory.